# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## WACO DIVISION

|  |  |  |
|---|---|---|
| | § | |
| | § | |
| WAG ACQUISITION, L.L.C., | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | No. 6:21-cv-00816-ADA |
| | § | |
| GOOGLE LLC and | § | Jury Trial Demanded |
| YOUTUBE, INC., | § | |
| | § | |
| Defendants. | § | |

## WAG ACQUISITION, L.L.C.'S OPPOSITION TO DEFENDANTS' MOTION FOR DISMISSAL OF PLAINTIFF'S COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(6) FOR FAILURE TO STATE A CLAIM

## TABLE OF CONTENTS

I.      Introduction ................................................................................................. 1

II.     Procedural Background ............................................................................... 2

III.    Legal Standard ............................................................................................ 2

IV.     Argument .................................................................................................... 4

    A.  Google's Articulation of the Plausibility Pleading Standard Runs Afoul of the Case Law of the Federal Circuit and This Court .................................................. 4

    B.  WAG's Complaint Satisfies the Plausibility Pleading Standard Regarding Direct Infringement ................................................................................................. 5

        1.  In Focusing on WAG's Quotation of Claim Language, Google Literally and Figuratively Minimizes WAG's Actual Evidence of Infringement ................. 5

        2.  Google Artificially Isolates Certain of WAG's Infringement Evidence into a Single Claim Element .................................................................................. 7

        3.  Google Ignores the Fundamental Nature of the Technology Required by Other Claim Elements ......................................................................................... 8

        4.  WAG's Complaint Against Amazon Is of No Moment................................. 10

        5.  Google's Case Law Is Inapposite ............................................................... 11

    C.  WAG's Complaint Sufficiently Identifies the Accused Services and/or Systems ..... 13

    D.  The Court Should Deny Google's Motion as Moot Because by the Time WAG Files This Opposition Brief, WAG Will Have Served Its Infringement Contentions ......... 17

    E.  In the Alternative, the Court Should Grant WAG Leave to Amend Its Complaint.... 17

V.      Conclusion ............................................................................................... 18

# TABLE OF AUTHORITIES

**Cases**

*Anza Tech., Inc. v. D-Link Sys., Inc.*,
 No. 3:16-cv-01263-BEN-AGS, 2016 WL 8732647 (S.D. Cal. Nov. 4, 2016) ...................... 16

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009) ........................................................................................................ 3, 5

*Bell v. Twombly*,
 550 U.S. 544 (2007) ............................................................................................................. 3

*In re Bill of Lading Transmission & Processing Sys. Patent Litig.*,
 681 F.3d 1323 (Fed. Cir. 2012) ........................................................................................... 2

*Bot M8 LLC v. Sony Corp. of Am.*,
 4 F.4th 1342 (Fed. Cir. 2021) ............................................................................ 2, 3, 8, 12, 13

*Chapterhouse, LLC v. Shopify, Inc.*,
 No. 2:18-CV-00300-JRG, 2018 WL 6981828 (E.D. Tex. Dec. 10, 2018) ............................ 12

*del Rocio Barbarene-Rovira v. Kuiper Dairy, LLC*,
 No. 6-20-CV-00250-ADA, 2020 WL 10282845 (W.D. Tex. Aug. 6, 2020) ......................... 17

*Diem LLC v. BigCommerce, Inc.*,
 No. 6:17-CV-186 JRG-JDL, 2017 WL 9935521 (E.D. Tex. May 11, 2017) ......................... 12

*Disc Disease Sols. Inc. v. VGH Sols., Inc.*,
 888 F.3d 1256 (Fed. Cir. 2018) ....................................................................................... 3, 10

*Encoditech, LLC v. Citizen Watch Co. of Am., Inc.*,
 No. SA-18-CV-1335-XR, 2019 WL 2601347 (W.D. Tex. June 25, 2019) .............................. 3

*FootBalance Sys. Inc. v. Zero Gravity Inside, Inc.*,
 No. 15-CV-1058 JLS (DHB), 2016 WL 903681 (S.D. Cal. Feb. 8, 2016) ............................ 15

*Frantz Design, Inc. v. Diamond Orthotic Lab., LLC*,
 No. 1:19-CV-00970-ADA, 2020 WL 10314642 (W.D. Tex. May 26, 2020) ......................... 18

*InCom Corp. v. Walt Disney Co.*,
 No. CV15-3011 PSG (MRWx), 2016 WL 4942032 (C.D. Cal. Feb. 4, 2016) ....................... 10

*Inhale, Inc. v. Gravitron, LLC*,
 No. 1-18-CV-762-LY, 2018 WL 7324886 (W.D. Tex. Dec. 10, 2018) ............................. 3, 10

*IP Commc'n Sols., LLC v. Viber Media (USA) Inc.*,
 No. 16-134-GMS, 2017 WL 1312942 (D. Del. Apr. 5, 2017) .............................................. 16

*Lexington Luminance LLC v. Serv. Lighting & Elec. Supplies, Inc.*,
  No. 3:18-CV-01074-K, 2018 WL 10425908 (N.D. Tex. Oct. 9, 2018) .................................15

*Macronix Int'l Co. v. Spansion Inc.*,
  4 F. Supp. 3d 797, 804 (E.D. Va. 2014) ...............................................................11

*Metricolor LLC v. L'Oreal S.A.*,
  791 F. App'x 183 (Fed. Cir. 2019) .......................................................................13

*MV3 Partners LLC v. Roku, Inc.*,
  No. W-18-CV-00308-ADA (W.D. Tex. Jan. 8, 2019) (ECF No. 35)...................................17

*Nalco Co. v. Chem-Mod, LLC*,
  883 F.3d 1337 (Fed. Cir. 2018)..........................................................................2, 3

*North Star Innovations, Inc. v. Micron Tech., Inc.*,
  No. 17-506-LPS-CJB, 2017 WL 5501489 (D. Del. Nov. 16, 2017) ....................................11

*NovaPlast Corp. v. Inplant, LLC*,
  No. 20-7396 (KM) (JBC), 2021 WL 389386 (D.N.J. Feb. 3, 2021) .....................................11

*Parity Networks, LLC v. Cisco Sys., Inc.*,
  No. 6:19-CV-00207-ADA, 2019 WL 3940952 (W.D. Tex. July 26, 2019)...........................17

*Patent Harbor, LLC v. DreamWorks Animation SKG, Inc.*,
  No. 6:11-cv-229, 2012 WL 9864381 (E.D. Tex. July 27, 2012)...........................................15

*People.ai, Inc. v. SetSail Techs., Inc.*,
  No. C 20-09148 WHA, 2021 WL 2333880 (N.D. Cal. June 8, 2021)...................................12

*Promos Techs., Inc. v. Samsung Elecs. Co.*,
  No. 18-307-RGA, 2018 WL 5630585 (D. Del. Oct. 31, 2018) ..............................................11

*SIPCO, LLC v. Streetline, Inc.*,
  230 F. Supp. 3d 351, 353 (D. Del. 2017)................................................................11

*TeleSign Corp. v. Twilio, Inc.*,
  No. CV 16-2106 PSG (SSx), 2016 WL 4703873 (C.D. Cal. Aug. 3, 2016) .........................12

*USC IP P'ship, L.P. v. Facebook, Inc.*,
  No. 6:20-cv-00555-ADA, 2021 WL 3134260 (W.D. Tex. July 23, 2021)..............................3

*Van De Vliert v. Tam Int'l, Inc.*,
  No. 6:15-cv-135-JRG, 2015 WL 6745811 (E.D. Tex. Oct. 30, 2015) ..................................15

*VideoShare, LLC v. Google LLC*,
  No. 6-19-CV-00663-ADA, 2020 WL 6365543 (W.D. Tex. May 4, 2020)............................14

## I.    INTRODUCTION

In their Motion to Dismiss (Dkt. No. 17, "Motion" or "Mot."), Defendants Google LLC and YouTube, Inc.[1] (collectively, "Google") make grandiose claims that Plaintiff WAG Acquisition, L.L.C.'s ("WAG") complaint (Dkt. No. 1, "Complaint") is "astonishingly deficient." Mot. at 1. That is simply not the case. WAG's Complaint contains clear and systematic allegations that provide a clear factual and legal basis for Google to understand the basis of the claims of infringement and the grounds upon which the claims are based.

Google bases its motion on two arguments: first, that WAG's infringement allegations are allegedly conclusory, and second, that WAG allegedly did not sufficiently specify the infringing services and/or systems. Both arguments fail because of Google's lack of particularity. Google fails to identify any specific claim limitation for which WAG allegedly fails to provide sufficient factual evidence; Google shows no actual ambiguity in WAG's detailed definition of the accused YouTube Streaming Services.

Moreover, Google misapprehends the plausibility standard under *Iqbal* and *Twombly* by faulting WAG for allegedly failing to provide an element-by-element analysis that Google's own case law states is not required. Indeed, Google does not settle to mispresent WAG's pleading obligations; it even attempts to convert WAG's Complaint into a claim chart, despite WAG's preliminary infringement contentions deadline having been weeks away at the time of Google's motion. In its concocted claim chart, Google further engages in an exercise of misdirection by highlighting similarities between the claim language at issue and WAG's infringement allegations, while ignoring the very evidence of infringement Google purports to be missing from WAG's Complaint.

---

[1] Defendants note in their Rule 7.1 Disclosure and the Motion that the correct name for "YouTube, Inc." actually is YouTube, LLC. Dkt. No. 18 at 1 n.1; Mot. at 1 n.1.

Additionally, Google fails to address that WAG is due to serve its infringement allegations on Google the very day that it is filing this opposition brief. Therefore, the Court should deny this Motion as moot.

Finally, even if the Court should find that WAG's Complaint in some respect falls short of the plausibility standard or that Google's Motion is not moot, it should grant WAG leave to amend its Complaint.

## II.    PROCEDURAL BACKGROUND

WAG filed its Complaint against Google on August 6, 2021. Dkt. No. 1. After an unopposed 45-day extension (Dkt. No. 15), Google filed the instant Motion on November 1, 2021 (Dkt. No. 17).

Per this Court's Amended Standing Order Regarding Notice of Readiness for Patent Cases, dated June 16, 2021 ("CRSR Order"), the Parties jointly filed the Case Readiness Status Report on November 8, 2021. Dkt. No. 29. "Once the CRSR has been filed, the Case Management Conference ("CMC") shall be deemed to occur fourteen (14) days after the filing date of the CRSR," which is November 22, 2021. CRSR Order at 1. Further pursuant to this Court's Standing Order Governing Proceedings – Patent Cases, dated October 8, 2021, the deadline for WAG to serve its preliminary infringement contentions is "[n]ot later than 7 days before the CMC," which is November 15, 2021. Dkt. No. 16.

## III.    LEGAL STANDARD

As the Federal Circuit recently reiterated in a case cited by Google in its Motion, "patentees need not prove their case at the pleading stage." *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1346 (Fed. Cir. 2021) (citing *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1339 (Fed. Cir. 2012); *Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1350 (Fed. Cir. 2018)). Moreover, "[a] plaintiff is not required to plead infringement on an

2

element-by-element basis." *Id.* at 1352 (citing *Nalco*, 883 F.3d at 1350 ("[T]he Federal Rules of Civil Procedure do not require a plaintiff to plead facts establishing that each element of an asserted claim is met.")). Indeed, to require an "element-by-element pleading standard for patent infringement . . . is unsupported and goes beyond the standard the Supreme Court articulated in *Iqbal* and *Twombly*." *Id.* (citing *Bell v. Twombly*, 550 U.S. 544, 556 (2007)).

Under *Iqbal* and *Twombly*, a plaintiff is required to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 556. This plausibility standard is met when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *id.*). "Specific facts are not necessary; the statement need only give the defendant fair notice of what the claim is and the ground upon which it rests." *Disc Disease Sols. Inc. v. VGH Sols., Inc.*, 888 F.3d 1256, 1260 (Fed. Cir. 2018) (internal quotation marks, citation, and alterations omitted).

Courts in this District have held plaintiffs to the same plausibility standard as the Federal Circuit under *Iqbal* and *Twombly* and refused to dismiss patent claims that did not set forth an explicit element-by-element analysis. *See, e.g.*, *USC IP P'ship, L.P. v. Facebook, Inc.*, No. 6:20-cv-00555-ADA, 2021 WL 3134260, at *1 (W.D. Tex. July 23, 2021) (citing *Iqbal*, 556 U.S. at 678 for standard that plaintiff only needs to plead "factual content that allows the court to *draw the reasonable inference* that the defendant is liable for the misconduct alleged") (emphasis added); *Inhale, Inc. v. Gravitron, LLC*, No. 1-18-CV-762-LY, 2018 WL 7324886, at *2 (W.D. Tex. Dec. 10, 2018) (denying motion to dismiss even though "complaint d[id] not expressly state that the accused products 'meet each and every claim'" of the patent-in-suit); *Encoditech, LLC v. Citizen Watch Co. of Am., Inc.*, No. SA-18-CV-1335-XR, 2019 WL 2601347, at *4 (W.D. Tex.

3

June 25, 2019) (recognizing the plausibility standard "for stating a claim of direct infringement set forth by the Federal Circuit in *Disc Disease*" is a "relatively low threshold").

Notably, Google does not cite a single case from this District in support of its Motion.[2]

## IV.  ARGUMENT

### A.  Google's Articulation of the Plausibility Pleading Standard Runs Afoul of the Case Law of the Federal Circuit and This Court

As stated above, both the Federal Circuit and this Court have rejected the notion that, in order to state a claim for patent infringement, a plaintiff must provide an element-by-element analysis of infringement under the plausibility standard set out in *Twombly* and *Iqbal*. Yet, that is exactly what Google argues is required. *See* Mot. at 2 ("The complaint must 'provid[e] facts sufficient to create a plausible inference that ***each element*** of the [asserted] claim is infringed by the accused products.'") (citations omitted) (emphasis in original). Indeed, Google goes as far as to map each of the elements to claim 1 of the '824 patent and compare it to WAG's allegations in the Complaint. *Id.* at 4–6. In essence, Google has attempted to convert WAG's Complaint into a claim chart. Google then concludes that the claim chart it itself has fashioned "demonstrates, for the majority of claim 1's limitations, [that] Plaintiff merely concludes—without ***any*** supporting evidence or citations to features and functionalities of the 'YouTube Streaming Services'—that this vague category of services infringe [sic]." *Id.* at 6 (emphasis in original). This element-by-element analysis is precisely what the Federal Circuit and this Court have instructed is ***not*** required under the plausibility standard. This unilateral and premature effort to force WAG to serve infringement contentions at the time of the Complaint is also in contradiction to this Court's Standing Order Governing Proceedings – Patent Cases, which sets the timing for service

---

[2] Google does reference the CRSR Related Case, *WAG Acquisition, L.L.C. v. Amazon.com, Inc.*, No. 6:21-cv-00815-ADA, that is pending before this Court, but for a factual proposition rather than a legal one.

of infringement contentions to be one week prior to the date of the CMC conference. Dkt. No. 16 at 1.

## B.  WAG's Complaint Satisfies the Plausibility Pleading Standard Regarding Direct Infringement

As explained above, Google misapprehends the plausibility standard to which WAG's Complaint should be measured. Applying the proper standard, which does not require an element-by-element analysis as Google sets out, WAG has provided ample "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

WAG's Complaint recites factual commonalities between the elements of the asserted claims of the patents-in-suit and the accused instrumentalities, which if true very plausibly support an inference that Google infringes. Despite the factual matter alleged, Google myopically focuses on WAG's recitation of claim language to the exclusion of the actual evidence. It artificially isolates WAG's allegations into certain claim elements and ignores what those factual allegations mean and the fundamental nature of the technology required by other claim elements.

### 1.  In Focusing on WAG's Quotation of Claim Language, Google Literally and Figuratively Minimizes WAG's Actual Evidence of Infringement

The following is an excerpt from Google's claim chart fashioned from WAG's Complaint that purports to show claim element 1(c)[3]:

---

[3] The claim element numbers and letters used herein refer to the numbers and letters Google designated in its Motion at pp. 4–6.

| 1(c): serially identifying the media data elements, said serial identification indicating a time sequence of the media data elements; | "The media data elements are serially identified, for example by 'rn' identifiers, which indicate a time sequence of the media data elements: |
|---|---|
| | 

YouTube streaming request/response, showing serial ID

The above shows a request captured in mid-stream for a video segment having the rn identifier 102 specified in the client request. The next following requests/responses are identical, except that the rn numbers are incremented for each request, with audio segments for the stream interleaved with video segments, in a repetitive pattern that continues until the end of the program." (Complaint at ¶ 25.) |

Mot at 4–5.

While the bolded font shows what Google purports to be the "overlap between the language of the claim and Plaintiff's complete allegations for those limitations," WAG has highlighted actual evidence of infringement WAG supplied—such as the "range" and "rn" request numbers that the Complaint alleges Google systematically uses in its client media element requests—that goes to the heart of the allegations and that Google completely ignores. *Id.* at 4.

Included in the highlighted information is Google's reproduction of the screenshot WAG included in its Complaint, which Google has minimized such that the evidence of infringement therein is no longer legible. The screenshot, reproduced in full below, provides information regarding Google's infringing activities, explained in greater detail below, including that the

6

source of the video is "youtube":



Complaint ¶ 25.

This example is just one of many that WAG provides in support of its allegations of Google's infringement of the three patents-in-suit. *See* Complaint ¶¶ 12–21 (comparing the claimed inventions with the accused systems); ¶¶ 25–26 (pertaining to Google's infringement of claim 1 of the '824 patent); ¶¶ 35–36 (pertaining to Google's infringement of claim 1 of the '594 patent); ¶¶ 44–45 (pertaining to Google's infringement of claim 1 of the '636 patent). Thus, Google's claim that WAG has "fail[ed] to provide any evidence or support for its allegations" is plainly false. Mot. at 7.

> 2.  <u>Google Artificially Isolates Certain of WAG's Infringement Evidence into a Single Claim Element</u>

While WAG does not agree that Google's transformation of WAG's infringement allegations in its Complaint was in any way appropriate or in keeping with this Court's orders or proceedings, WAG does protest the manner in which Google disingenuously divvied up WAG's

allegations.

Returning again to claim element 1(c) shown above, by artificially isolating WAG's evidence into this single claim element, Google misleadingly suggests that it is **only** pertinent to claim element 1(c). Of course, the claim elements are interrelated, and the information presented above also demonstrates Google's practice of other claim elements, such as "distributing over the Internet, from a server system to one or more user systems, a pre-recorded audio or video program stored in digitally encoded form on computer-readable media" (claim element 1(p)), "reading, by at least one computer of the server system, the pre-recorded audio or video program from the computer-readable media" (claim element 1(a)), "supplying, at the server system, media data elements representing the program, each media data element comprising a digitally encoded portion of the program and having a playback rate" (claim element 1(b), shown, *inter alia*, by the video being in "mp4" format. Complaint ¶ 25. It is evident on the face of the figure that the captured requests and responses are taken from an actual dialog between a user computer and a server system, conducted over the Internet, concerning units of video/mp4 type data (each with corresponding "range" and "rn" serial identifiers, the length of the unit, its duration, the source from which it came, etc.). The allegations on the face of the Complaint reflect a process of transmitting a stream by breaking it into serially identified units and then delivering the stream by responding to sequential requests for the units for recreating the streaming client, which goes to the heart of what is alleged. In sum, there is a wealth of information conveyed that Google no doubt fully appreciates all too well, yet would have this Court simply ignore.

3.    Google Ignores the Fundamental Nature of the Technology Required by Other Claim Elements

Notably, Google does not identify any **particular** element for which WAG allegedly fails to provide supporting evidence. *Cf. Bot M8*, 4 F.4th at 1354 (dismissing claims with respect to

one patent at issue where complaint failed to allege facts sufficient to infer that "the game program and mutual authentication program are stored *together*") (internal quotation marks and citations omitted) (emphasis in original). Rather, Google makes vague blanket statements regarding the alleged absence of support "for the majority of claim 1's limitations" (Mot. at 6) or allegedly "failing to provide *any* evidence or support for [WAG's] allegations" (Mot. at 7) (emphasis added). This is because Google *cannot* make such a claim. The technology recited by many of the claim elements for which WAG allegedly lacks evidence is relatively straightforward. For example, many of the claim elements discuss a server system. Google does not deny that the YouTube Streaming Services comprise a server, because of course it cannot. Again, the provided figure clearly shows a series of requests (one of which is highlighted, along with a panel showing the details of the request) going to "googlevideo.com."

Furthermore, Google's motion does not address *any* of the specifics of Count II, which specifically lays out details of the infringing client-side JavaScript software that Google provides to users, which sends sequential HTTP GET requests for media data elements, by the serial IDs assigned to those elements, referencing the same diagram presented in the first Count (which shows the client requests referred to in Count II, and the serial identifiers, as well as the responses with the elements having those identifiers, pertaining to Counts I and III (as well as Count II).

The Complaint also recites as factual assertions the observation that the communications were conducted over a line having a data rate in excess of the playback rate of the media, and that each sending was as fast as the connection would allow (which can be understood as alleging that nothing was observed to be throttling the line speed). Complaint ¶ 26. This paragraph can also be understood to allege that each and every piece of streaming data that

arrived at the user side came in response to a corresponding preceding request, *i.e.*, that the communication is *request-driven* (*i.e.*, via "pull" as separately alleged in ¶ 19), and as such sent without depending on some sequencing or timing necessarily performed on the server (as correspondingly alleged in ¶ 26).

Authority from the Federal Circuit and this case confirms the sufficiency of WAG's allegations. *See Disc Disease*, 888 F.3d at 1260 (reversing district court's dismissal under Rule 12(b)(6) where complaint attached photos of accused products' packaging as exhibits and alleged they met "each and every element of at least one claim of" the patents at issue, where the case "involve[d] a simple technology"); *Inhale*, 2018 WL 7324886, at *2 (denying motion to dismiss where complaint "identifie[d] the accused product by name and by attached photos," where the "case involve[d] simple technology") (citing *Disc Disease*, 888 F.3d at 1259–60); *see also InCom Corp. v. Walt Disney Co.*, No. CV15-3011 PSG (MRWx), 2016 WL 4942032, at *3 (C.D. Cal. Feb. 4, 2016) (denying motion to dismiss where "Plaintiff . . . stated a plausible claim for direct infringement by specifically identifying Defendants' products and alleging that they perform the same unique function as Plaintiff's patented system") (citations omitted).

### 4.   WAG's Complaint Against Amazon Is of No Moment

In support of Motion, Google presents WAG's claims in its complaint against Amazon and certain similarities between the allegations therein and those in WAG's Complaint against Google. Mot. at 6–7. WAG's complaint against Amazon is not directly relevant to the claims against Defendants, but WAG notes that, in its case, Amazon simply answered the complaint instead of filing a motion to dismiss. Answer, *WAG Acquisition, L.L.C. v. Amazon.com, Inc.*, No. 6:21-cv-00815-ADA (W.D. Tex. Nov. 1, 2021) (ECF No. 22). Thus, it appears the allegations of direct infringement were sufficient to put Amazon on notice as to what it must defend. Of course, any similarity between the complaints merely points to the similarity of the functionality of

10

Amazon's and Google's accused systems.[4]

       5.     <u>Google's Case Law Is Inapposite</u>

Given the inaccuracy of Google's claims regarding the sufficiency of WAG's factual

allegations, its case law is correspondingly inapposite. Much of the authority Google cites relates

to cases where patentees copied the claim language without stating anything more. *See Promos*

*Techs., Inc. v. Samsung Elecs. Co.*, No. 18-307-RGA, 2018 WL 5630585, at *4 (D. Del. Oct. 31,

2018) ("Plaintiff's Complaint substantially mirrors the claim language in the [patents at issue]"

without "mov[ing] beyond the legal conclusions that Samsung DRAM products infringe.");

*North Star Innovations, Inc. v. Micron Tech., Inc.*, No. 17-506-LPS-CJB, 2017 WL 5501489, at

*2 (D. Del. Nov. 16, 2017) ("[T]he FAC does little more than parrot back the language of these

claim elements and then states that the accused product is comprised of such elements.");

*SIPCO, LLC v. Streetline, Inc.*, 230 F. Supp. 3d 351, 353 (D. Del. 2017) (finding two factual

allegations of patent ownership and defendants' sale of certain products were "insufficient to

plausibly allege patent infringement"); *Macronix Int'l Co. v. Spansion Inc.*, 4 F. Supp. 3d 797,

804 (E.D. Va. 2014) ("[T]he FAC simply alleges that each element of a cited claim is infringed

and then parroted [sic] the claim language for each element."); *NovaPlast Corp. v. Inplant, LLC*,

No. 20-7396 (KM) (JBC), 2021 WL 389386, at *8 (D.N.J. Feb. 3, 2021) ("[T]he Complaint

alleges in a conclusory manner that the Accused Products 'meet[ ] the limitations of one or more

claims of the '213 Patent.'") (citation omitted).

As demonstrated above, WAG's factual allegations in its Complaint satisfy the *Iqbal* and

*Twombly* plausibility standard for all three patents-in-suit. While WAG does provide a

---

[4] The Court might also ask whether the similarities in the respective patterns of alleged infringement by Google and Amazon have anything to do with compliance with a common industry standard. It should be no surprise if that is the case – a subject that is indeed addressed in WAG's infringement contentions.

screenshot in support of its allegations, unlike the plaintiff in *Chapterhouse*, WAG "allege[s] how the screenshots meet the text of the exemplary claim." *Chapterhouse, LLC v. Shopify, Inc.*, No. 2:18-CV-00300-JRG, 2018 WL 6981828, at *2 (E.D. Tex. Dec. 10, 2018). And unlike the plaintiff in *Diem*, WAG does not contest the applicability of this standard. *Diem LLC v. BigCommerce, Inc.*, No. 6:17-CV-186 JRG-JDL, 2017 WL 9935521, at *2 (E.D. Tex. May 11, 2017) ("Diem's entire Response argues that the 'heightened pleading standard' required by *Lyda*, *i.e.*, the *Iqbal* and *Twombly* pleading standard, does not apply to its claims.") (citation omitted).

Other of Google's cited authority runs counter to the Federal Circuit's recent reiteration of the plausibility standard required in patent cases. *Compare People.ai, Inc. v. SetSail Techs., Inc.*, No. C 20-09148 WHA, 2021 WL 2333880, at *3 (N.D. Cal. June 8, 2021) (requiring "a complaint [to] explain how or why an accused product infringes every element of every asserted claim or explain why that cannot be shown at this stage") (internal quotation marks and citation omitted) *with Bot M8*, 4 F.4th at 1352 ("Here, the district court instructed counsel for Bot M8 that it must explain in [the] complaint every element of every claim that you say is infringed and/or explain why it can't be done. We disagree with the district court's approach and reiterate that a plaintiff need not prove its case at the pleading stage.") (internal quotation marks and citations omitted).

The other cases Google cites are no less inapposite. In *TeleSign*, the court dismissed the complaint at issue where it failed to "plausibly allege that any one product produced by Defendant performs all elements." *TeleSign Corp. v. Twilio, Inc.*, No. CV 16-2106 PSG (SSx), 2016 WL 4703873, at *3 (C.D. Cal. Aug. 3, 2016). Unlike the plaintiff in *TeleSign*, WAG has alleged sufficient factual content to support its claims that Google has infringed all three patents-in-suit via the YouTube Streaming Services. While Google argues that there is some ambiguity

12

as to what is meant by YouTube Streaming Services, it does not identify any other product or service WAG has accused of infringement—because no such product or service exists to date. Additionally, in *Metricolor*, the court found that at least one claim limitation was not present in the accused products because it was directly contradicted by the form of the products itself. *Metricolor LLC v. L'Oreal S.A.*, 791 F. App'x 183, 188 (Fed. Cir. 2019) ("[N]othing in the complaint shows the Accused Products contain the 'air-tight reclosing seal' / 'air-tight reclosable seal' required by the independent claims. . . . To the contrary, . . . the Redken pH-Bonder product has an 'open hole at the base of the bottle,' plainly contradicting its allegation of an 'air-tight' seal."); *see also Bot M8*, 4 F.4th at 1354 (dismissing claims with respect to one patent at issue where allegations "reveal[ed] an inconsistency that [wa]s fatal to its infringement case"). Google has identified no such contradiction with respect to any of the claim limitations at issue in this case.

### C.   WAG's Complaint Sufficiently Identifies the Accused Services and/or Systems

Google's argument regarding WAG's alleged failure to sufficiently identify the accused services and/or systems similarly fails. Google argues that WAG's definition of "YouTube Streaming Services" is "vague" and "ambiguous" without stating what about the detailed definition is vague or ambiguous. Mot. at 8–9 (citing Complaint ¶ 2). Indeed, WAG's definition does exactly what Google complains it does not—it "identif[ies] specific services [and] systems" that infringe the patents-in-suit, i.e., "video-on-demand and live streaming programming, which Defendants provide via the Internet in the United States and worldwide." Complaint ¶ 2. Rather than stopping there, WAG describes the services and systems further by adding that they are "for pre-recorded and live programming, delivered to desktop, tablet, smartphone, smart TV, streaming stick, and other streaming device and media player platforms, by way of [Defendants']

streaming services." *Id.* This description provides more than enough detail for Google to ascertain what services and/or systems are being accused of infringement.

Furthermore, turning once again to the provided graphic, the Court can see "www.youtube.com" in the "Structure" tab of the graphic, and Google cannot pretend not to appreciate that this reflects that the request depicted resulted from clicking on a video on Google's flagship video site, www.youtube.com. It is reasonable to conclude that the Complaint is representing what is observable for Google's main product on this site, *i.e.*, any of its millions of prerecorded videos. In addition, there is another count directed at the "live" video also provided over youtube.com, which anyone can casually verify by scrolling down to "Live" on the YouTube home page. The Complaint can fairly be read to allege that all of this activity infringes (which is indeed the allegation). The Complaint also identifies other forms in which the same base services are provided, for example, "tablet, smartphone, smart TV, streaming stick, and other streaming device and media player platforms." It should be evident that the thrust of the allegations is that these are just different packagings for delivering substantially the same prerecorded and live streaming products via the same infringing methods as employed on youtube.com.

Indeed, in another case brought against Google before this Court, the plaintiff described "Defendants' infringing products and services" as "products and services for receiving, converting, and sharing streaming video, including those marketed as Youtube [sic]." *VideoShare, LLC v. Google LLC*, No. 6-19-CV-00663-ADA, 2020 WL 6365543, at *1 (W.D. Tex. May 4, 2020). In that case as well, Google brought a pre-answer motion to dismiss. *Id.* However, in that case, Google did not contest the sufficiency of plaintiff's identification of the allegedly infringing products and services. Rather, Google only challenged the complaint on

claim preclusion grounds. *Id.*

The case law Google cites in support is irrelevant at best. In *Patent Harbor*, the court found that the plaintiff's "identifi[cation] of a specific category of products it believe[d] were manufactured using the patented method" was sufficient "to put Defendants on notice as to what they must defend." *Patent Harbor, LLC v. DreamWorks Animation SKG, Inc.*, No. 6:11-cv-229, 2012 WL 9864381, at *4 (E.D. Tex. July 27, 2012) (citations omitted). In *Van De Vliert*, the court found that, where the plaintiff's entire infringement allegations comprised two sentences, it was unclear whether a "'Swellable Packer' comprise[d] the entire claimed system or [wa]s simply a component of the allegedly infringing system." *Van De Vliert v. Tam Int'l, Inc.*, No. 6:15-cv-135-JRG, 2015 WL 6745811, at *1–2 (E.D. Tex. Oct. 30, 2015). There is no such confusion here, where WAG has unambiguously defined YouTube Streaming Services to be the infringing system.

The remainder of Google's cases pertain to situations where the defendants had multiple product offerings, but the plaintiffs' broad description of accused products left ambiguity in what particular products were being identified. For instance, in *FootBalance*, the court found that the identification of "[defendant]'s custom insoles" was insufficient where such products "encompass[ed] essentially [defendant]'s entire business." *FootBalance Sys. Inc. v. Zero Gravity Inside, Inc.*, No. 15-CV-1058 JLS (DHB), 2016 WL 903681, at *4 (S.D. Cal. Feb. 8, 2016). In *Lexington Luminance*, the court found the accused products were not sufficiently identified where the plaintiff identified one LED bulb by name and described the remainder as "other similar products, which perform substantially the same function as the devices embodied in one or more claims of the '851 Patent in substantially the same way to achieve the same result." *Lexington Luminance LLC v. Serv. Lighting & Elec. Supplies, Inc.*, No. 3:18-CV-01074-K, 2018

15

WL 10425908, at *2 (N.D. Tex. Oct. 9, 2018). Similarly, in *Anza Technology*, the court found

that the complaint "*vaguely* accuses a general, broad category of 'electronics hardware products'

sold under Defendant's brand as being manufactured in part by using the claimed method." *Anza*

*Tech., Inc. v. D-Link Sys., Inc.*, No. 3:16-cv-01263-BEN-AGS, 2016 WL 8732647, at *4 (S.D.

Cal. Nov. 4, 2016) (internal quotation marks and citation omitted) (emphasis in original).

      Here, however, there is not an array of completely disparate products, such as insoles,

LED bulbs, or electronics hardware products, all in one case. YouTube's business is streaming,

and WAG's Complaint describes those YouTube Streaming Services it believes infringe the

patents-in-suit.

      In this way, the present case is more analogous to *IP Communication Solutions*, wherein

the plaintiff's complaint was "directed to an undefined V[o]IP server system that supports

Viber's application." *IP Commc'n Sols., LLC v. Viber Media (USA) Inc.*, No. 16-134-GMS, 2017

WL 1312942, at *2 (D. Del. Apr. 5, 2017) (internal quotation marks and citation omitted). The

court denied the defendant's motion to dismiss for failure to state a claim, recognizing that,

unlike much of the case law cited by the defendant, "the patent-in-suit [wa]s directed to *methods*

and *systems* for providing a service." *Id.* at *3 (citation omitted) (emphasis in original). The court

elaborated that "[the patent-in-suit] is not directed to a specific product, but instead, to a server

system that comprises a number of components. . . . To require that [plaintiff] name a specific

infringing product would be nonsensical in this instance. It is unclear how [plaintiff] can be any

more specific about what aspects of [defendant]'s technology infringe its patent when [plaintiff]

likely does not have access to [defendant]'s computer code." *Id.* The court further stated that the

defendant "Viber provides a mobile VoIP client application program. The program is supported

by a server that performs a number of functions . . . . Accordingly, Viber cannot persuasively

argue that it is not on notice of what it must defend in this suit." *Id.* (citations omitted). Here, as in *IP Communication Solutions*, Google cannot argue that it is not on notice of what "streaming services" it must defend.

**D.     The Court Should Deny Google's Motion as Moot Because by the Time WAG Files This Opposition Brief, WAG Will Have Served Its Infringement Contentions**

As stated above, on the day WAG files this opposition to Google's Motion, November 15, 2021, WAG will also have served its preliminary infringement contentions on Google. Thus, this Court should deny Google's Motion as moot because any deficiencies would necessarily be addressed by WAG's infringement contentions. *See Parity Networks, LLC v. Cisco Sys., Inc.*, No. 6:19-CV-00207-ADA, 2019 WL 3940952, at *2 (W.D. Tex. July 26, 2019) ("[T]he Court founds that Plaintiff's pleadings are sufficient and that any deficiencies will necessarily be addressed when Plaintiff serves its infringement contentions as is required."); *see also MV3 Partners LLC v. Roku, Inc.*, No. W-18-CV-00308-ADA (W.D. Tex. Jan. 8, 2019) (ECF No. 35) (denying motion to dismiss for failure to state a claim in view of the fact that "the Court will enter a scheduling order that sets a deadline for Plaintiff to proffer its infringement contentions, which the Court anticipates Plaintiff will provide in good faith").

**E.     In the Alternative, the Court Should Grant WAG Leave to Amend Its Complaint**

In the event this Court finds the infringement allegations in WAG's Complaint do not meet the plausibility standard set out in *Iqbal* and *Twombly* or that they do not sufficiently identify the accused services and/or systems, WAG requests that the Court grant it leave to amend its Complaint to correct any deficiencies perceived by the Court. WAG asserts that leave to amend at this early stage of the case would "enhance[] the case's efficiency and will hasten the controversy's resolution under the law." *del Rocio Barbarene-Rovira v. Kuiper Dairy, LLC*,

17

No. 6-20-CV-00250-ADA, 2020 WL 10282845, at *3 (W.D. Tex. Aug. 6, 2020); *see also Frantz*

*Design, Inc. v. Diamond Orthotic Lab., LLC*, No. 1:19-CV-00970-ADA, 2020 WL 10314642, at

*2 (W.D. Tex. May 26, 2020) ("Absent prejudice, or a strong showing of any of the remaining

[factors], there exists a presumption under Rule 15(a) in favor of granting leave to amend.")

(internal quotation marks and citation omitted) (alteration in original).

## V.   CONCLUSION

For the foregoing reasons, WAG respectfully requests that the Court deny Google's

motion, or in the alternative, grant WAG leave to amend its Complaint.

Dated:    November 15, 2021

> **HALEY & OLSON, P.C.**
> 100 North Ritchie Road, Suite 200
> Waco, Texas 76712
> Tel: (254) 776-3336
> Fax: (254) 776-6823
> By: /s/ *Brandon R. Oates*
> Brandon R. Oates (State Bar No. 24032921)
> Email: *boates@haleyolson.com*
>
> OF COUNSEL:
>
> **LISTON ABRAMSON LLP**
> The Chrysler Building
> 405 Lexington Ave, 46th Floor
> New York, New York 10174
> Tel: (212) 257-1630
> Ronald Abramson (*Admitted pro hac vice*)
> David G. Liston (*Admitted pro hac vice*)
> Ari J. Jaffess (*Admitted pro hac vice*)
> Alex G. Patchen (*Admitted pro hac vice*)
> M. Michael Lewis (*Admitted pro hac vice*)
> Gina K. Kim
> Email: *docket@listonabramson.com*
>
> *Attorneys for Plaintiff WAG Acquisition, L.L.C.*

18

**CERTIFICATE OF SERVICE**

On November 15, 2021, I certify that I caused a copy of WAG Acquisition, L.L.C.'s

Opposition to Defendants' Motion for Dismissal of Plaintiff's Complaint Pursuant to Fed. R.

Civ. P. 12(b)(6) for Failure to State a Claim to be served upon counsel of record for Defendants

via ECF.

Dated:   November 15, 2021

/s/ *Brandon R. Oates*
Brandon R. Oates