**CONFIDENTIAL – OUTSIDE ATTORNEY'S EYES ONLY**
**PURSUANT TO INTERIM PROTECTIVE ORDER**

**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

|  |  |  |
|---|---|---|
| WAG ACQUISITION, L.L.C., | § § § § § | |
| Plaintiff, | § § | No. 6:21-cv-00816-ADA |
| v. | § § | Jury Trial Demanded |
| GOOGLE LLC and YOUTUBE, INC., | § § § | |
| Defendants. | § § § | |

**PLAINTIFF'S OPPOSITION TO**
**DEFENDANTS GOOGLE LLC AND YOUTUBE, LLC'S MOTION TO TRANSFER TO**
**THE NORTHERN DISTRICT OF CALIFORNIA PURSUANT TO 28 U.S.C. § 1404(a)**

# TABLE OF CONTENTS

I.     Introduction ................................................................................................................ 1

II.    Factual Background .................................................................................................... 2

III.   Argument .................................................................................................................... 4

   A.    Legal Standard for Transfer ............................................................................... 4

   B.    Google Waived Its Right to Bring Its Motion by Failing to Raise This Pre-*Markman*
   Issue in the CRSR ........................................................................................................ 6

   C.    The Transfer Factors Weigh Against Transferring This Case to the NDCA ................... 9

      1.    The Private Interest Factors Weigh Against Transfer ................................. 9

      2.    The Public Interest Factors Weigh Against Transfer ................................. 14

IV.    Conclusion ............................................................................................................... 15

**TABLE OF AUTHORITIES**

**Cases**

*Action Indus., Inc. v. U.S. Fid. & Guar. Co.*,

358 F.3d 337 (5th Cir. 2004) ................................................................................ 4

*In re Apple Inc.*,

979 F.3d 1332 (Fed. Cir. 2020) ............................................................................ 5

*Bel Power Sols. Inc. v. Monolithic Power Sys.*,

No. 6:21-CV-655-ADA, 2022 WL 2161056 (W.D. Tex. June 15, 2022) ............. 15

*Kahn v. Gen. Motors Corp.*,

889 F.2d 1078 (Fed. Cir. 1989) ............................................................................ 15

*Monterey Rsch., LLC v. Broadcom Corp.*,

No. W-21-CV-00542-ADA, 2022 WL 526242 (W.D. Tex. Feb. 21, 2022) .................... 5, 14

*Mortgage Grader, Inc. v. First Choice Loan Servs. Inc.*,

811 F.3d 1314 (Fed. Cir. 2016) ............................................................................ 6

*Quest NetTech Corp. v. Apple, Inc.*,

No. 2:19-cv-118, 2019 WL 6344267 (E.D. Tex. Nov. 27, 2019) ........................... 5

*Scramoge Tech. Ltd. v. Samsung Elecs. Co. Ltd.*,

No. 6:21-cv-00454-ADA, 2022 U.S. Dist. LEXIS 92262 (W.D. Tex. May 16, 2022) .......... 12

*Stewart Org., Inc. v. Ricoh Corp.*,

487 U.S. 22 (1988) ................................................................................................ 4

*TC Heartland LLC v. Kraft Foods Grp. Brands LLC*,

137 S. Ct. 1514 (2017) .......................................................................................... 4

*In re TS Tech USA Corp.*,

551 F.3d 1315 (Fed. Cir. 2008) ............................................................................ 4

*In re Vistaprint Ltd.*,

628 F.3d 1342 (Fed. Cir. 2010) ............................................................................ 5

*In re Volkswagen AG*,

371 F.3d 201 (5th Cir. 2004) ................................................................................ 5

*In re Volkswagen of Am., Inc.*,

545 F.3d 304 (5th Cir. 2008) ................................................................................ 4

*WSOU Invs., LLC v. Canon, Inc.*,

No. 6:20-CV-00981-ADA (W.D. Tex. Feb. 15, 2022)....................................................... 5, 14

**Rules and Statutes**

28 U.S.C. § 1400.......................................................................................................... 4

28 U.S.C. § 1404...................................................................................................... 2, 4

Federal Rule of Civil Procedure 1 ............................................................................ 6

Plaintiff WAG Acquisition L.L.C. ("Plaintiff" or "WAG") submits this memorandum opposing the motion to transfer venue filed by Defendants Google LLC and YouTube, LLC (collectively, "Defendants" or "Google") ("Motion" or "Mot.") (Dkt. No. 40). This memorandum is further supported by the Declaration of Alex G. Patchen ("Patchen Decl."), submitted herewith.

## I.     INTRODUCTION

Google seeks a home forum in the Northern District of California ("NDCA"), arguing to this Court that it would be more convenient to litigate this case in the NDCA. While Google may find the NDCA "convenient" for its purposes, in arguing for a transfer, Google cherry-picks Californian witnesses—both its own and those related to alleged prior art—while ignoring significant evidence that Google's own key witnesses are primarily based in Cambridge, Massachusetts—not in the NDCA.

First, the Court need not consider Google's substantive arguments, as Google waived its right to bring this transfer motion. Google did so by failing to identify its intention to make a transfer motion in the Case Readiness Status Report ("CRSR") (Dkt. No. 29, filed November 8, 2021), despite knowing at the time it would make such motion. The CRSR requires the parties to identify to the Court all pre-*Markman* disputes. At the time the parties submitted the CRSR, Google likely knew it planned to file a transfer motion. Indeed, only four days after filing the CRSR, Google notified this Court that it intended to file a motion to transfer. Patchen Decl. ¶¶ 3–4. At that time, WAG stated that Google had waived its right to file a motion to transfer. *Id.*, Ex. B at 3. Instead of filing it in the coming weeks as it stated, however, Google waited until April 7, 2022 to file its Motion. Waiting until then required WAG to either not seek venue discovery or delay the scheduled *Markman* hearing. The timing of the Motion prejudiced WAG and manipulated the Court's then-existing procedures regarding venue discovery to create

additional delay. Where this Court's individual practices explicitly state that the Court will determine any transfer motion prior to conducting a *Markman* hearing, this type of dispute clearly should be included in the CRSR. By failing to do so, Google has waived its right to file this Motion.

The Motion does not seek to dismiss for improper venue, but rather for a discretionary transfer as a matter of convenience, to the NDCA, under 28 U.S.C. § 1404. Transfer under § 1404 is only appropriate where the proposed transferee forum is clearly more convenient than the plaintiff's choice of forum. As Google cannot meet its burden that the alternative venue is clearly more convenient, WAG respectfully submits that the Court should exercise its discretion and deny the motion to transfer.

## II. FACTUAL BACKGROUND

On August 6, 2021, WAG filed its complaint against Google for infringement of WAG's patents related to the delivery of streaming media over the Internet. Dkt. No. 1 ("Compl."). WAG is an LLC with its principal place of business located in New Jersey, and each of Defendants is incorporated in Delaware.[1] As of August 2021, Google employed approximately 1,899 employees in Austin, Texas. Dkt. No. 40-1 ¶ 9. Google's infringement arises from its delivery of pre-recorded and live programming for itself and others to consumers via the Internet, to numerous media player platforms, including but not limited to computers, smart TVs, smart phones, tablets, and streaming sticks. Google does so using different services, including "YouTube client and server streaming infrastructure and functions relating to streaming of pre-

---

[1] At various points in its Motion, Google characterizes WAG as a "patent assertion entity." Mot. at 3, 6. To the extent Google asserts that WAG is a ***non-practicing*** patent assertion entity, WAG denies such allegation. *See, e.g.*, Compl. ¶¶ 1, 13. Otherwise, WAG is a "patent assertion entity" to the same extent Google is. *See, e.g.*, Complaint, *Google LLC v. Sonos, Inc.*, No. 3:20-CV-3845 (N.D. Cal. June 11, 2020) (ECF No. 1).

recorded and live video, audio, and TV programming over the Internet such as streaming and playing content from www.youtube.com, music.youtube.com, and tv.youtube.com." Mot. at 2.[2]

On November 8, 2021, pursuant to the then-governing Amended Standing Order Regarding Notice of Readiness for Patent Cases, dated June 16, 2021 ("CRSR Standing Order") (attached to Patchen Decl. as Ex. A), the parties jointly filed their CRSR. Pursuant to the CRSR Standing Order, the parties identified all pre-*Markman* issues to raise at the Case Management Conference. *Id.* The parties stated they "ha[d] no pre-Markman issues . . . beyond Google's position that this case should be considered a CRSR Related Case with the case against Netflix, Inc." Dkt. No. 29 at 2. At the time the parties met and conferred regarding the CRSR, Google did not indicate its intention to bring this Motion. Patchen Decl. ¶ 3.

Despite its silence during the CRSR meet and confer, a mere ***four days*** after the filing of the CRSR, Google disclosed to the Court that it "intend[ed] to file a motion to transfer in the coming weeks." *See* Patchen Decl., Ex. B. Specifically, Google previewed this Motion in the parties' submissions regarding whether the Netflix case should be considered a CRSR Related Case sent to the Court on November 12, 2021. *Id.* In response to WAG's argument that "Google should be deemed to have waived its right to make such [a motion]," Google argued, much as it does now, that "anticipated motions to transfer do not need to be . . . raised in the CRSR." *Id.*

Nearly ***five months*** passed before counsel for Google finally contacted counsel for WAG to request a meet and confer regarding Google's intention to file the instant Motion on April 5, 2022. *Id.* ¶ 6. At the meet and confer, when confronted with the timing of its motion, Google's

---

[2] In its Motion, Google contests that "anything other than video streaming from www.youtube.com, music streaming from music.youtube.com, and video streaming from tv.youtube.com" were not accused in WAG's infringement contentions. Mot. at 3 n.2. WAG vehemently disagrees with Google's argument but limits the scope of the current venue dispute to those functionalities at this time.

counsel simply stated it had been investigating facts related to its Motion and was unable to identify any specific fact or circumstance that had changed since November 2021. *Id.* ¶ 7. On April 7, 2022, Google filed the instant Motion.

## III. ARGUMENT

### A. Legal Standard for Transfer

The Supreme Court has held that 28 U.S.C. § 1400(b) exclusively governs venue in a patent infringement action against a domestic U.S. corporation. *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 137 S. Ct. 1514, 1519–20 (2017). Google's transfer motion does not challenge that venue is proper in this District under 28 U.S.C. § 1400(b). Rather, Google seeks a discretionary transfer under 28 U.S.C. § 1404(a).

In patent cases, the law of the regional circuit governs motions to transfer under § 1404(a). *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008). A district court "*may* transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a) (emphasis added). The decision on a motion to transfer is placed in the discretion of the district court for an "'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)).

The threshold question under § 1404(a) is whether a civil action "'might have been brought' in the [transfer] destination venue." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 312 (5th Cir. 2008) ("*Volkswagen II*"). If the destination venue would have been a proper venue, then "[t]he determination of 'convenience' turns on a number of public and private interest factors, none of which can be said to be of dispositive weight." *Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004) (footnote and citation omitted). The private factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory

process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses;

and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive."

*In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) (citing *Piper Aircraft Co. v. Reyno*, 454

U.S. 235, 241 n.6 (1981)). The public factors include: "(1) the administrative difficulties flowing

from court congestion; (2) the local interest in having localized interests decided at home; (3) the

familiarity of the forum with the law that will govern the case; and (4) the avoidance of

unnecessary problems of conflict of laws of the application of foreign law." *Id.*

The moving party has the burden to prove not only that the alternative venue is more

convenient, but that it is *clearly* more convenient. *In re Vistaprint Ltd.*, 628 F.3d 1342, 1346

(Fed. Cir. 2010); *Volkswagen II*, 545 F.3d at 314 n.10. While "clearly more convenient" is not

explicitly equivalent to "clear and convincing," the moving party "must show materially more

than a mere preponderance of convenience, lest the standard have no real or practical meaning."

*Quest NetTech Corp. v. Apple, Inc.*, No. 2:19-cv-118, 2019 WL 6344267, at *7 (E.D. Tex. Nov.

27, 2019). The Federal Circuit has clarified that, for a court to hold that a factor favors transfer,

the movant need not show that that factor *clearly* favors transfer. *In re Apple Inc.*, 979 F.3d 1332,

1340 (Fed. Cir. 2020).

Courts in this District routinely deny motions to transfer under circumstances similar to

the instant case. *See, e.g.*, *Monterey Rsch., LLC v. Broadcom Corp.*, No. W-21-CV-00542-ADA,

2022 WL 526242, at *13–14 (W.D. Tex. Feb. 21, 2022) (denying transfer motion where patents

at issue were common to two other cases in the District); *WSOU Invs., LLC v. Canon, Inc.*, No.

6:20-CV-00981-ADA, slip op. at 26–27 (W.D. Tex. Feb. 15, 2022) (attached to Patchen Decl. as

Ex. C), *mandamus denied*, *In re Canon Inc.*, No. 2022-131, 2022 WL 1197336 (Fed. Cir. Apr.

22, 2022) (denying transfer motion where there was a co-pending case in this Court involving the

same parties and similar technology that "were filed on the same day, [we]re proceeding on similar schedules, and ha[d] the same Markman hearing date").

    **B. Google Waived Its Right to Bring Its Motion by Failing to Raise This Pre-*Markman* Issue in the CRSR**

       The purpose of Federal Rule of Civil Procedure 1 is to "to secure the just, speedy, and inexpensive determination of every action and proceeding." In advancing these goals, the Court has the inherent power to control its docket. *Mortgage Grader, Inc. v. First Choice Loan Servs. Inc.*, 811 F.3d 1314, 1321 (Fed. Cir. 2016). Google's failure to raise its motion to transfer as a pre-*Markman* issue in the CRSR prevented the Court from effectively managing its docket.

       As evidenced by the Second Amended Standing Order Regarding Motions for Inter-District Transfer, dated August 18, 2021 ("MTT Standing Order"), transfer motions are plainly pre-*Markman* issues in that they must be decided before the Court will conduct a *Markman* hearing. Indeed, the MTT Standing Order explicitly states that "[w]hen there is a pending inter-district transfer, the Court will either promptly enter an order resolving the pending motion(s) prior to the Markman hearing or it will postpone the Markman hearing until it has had the opportunity to do so. ***The Court will not conduct a Markman hearing until it has resolved the pending motion to transfer.***" MTT Standing Order at 1 (emphasis added). Indeed, with Google's Motion pending, the Court was forced to delay the *Markman* hearing scheduled here by two and a half months from June 3, 2022 to August 23, 2022. Dkt. No. 47.

       Because the instant venue issue is a pre-*Markman* issue, Google was required to include it in the CRSR on November 8, 2021, pursuant to the CRSR Standing Order. Instead, it waited to even raise the issue until after the parties met and conferred regarding the CRSR and subsequently filed the CRSR. Patchen Decl. ¶¶ 3–4. On November 12, 2021, when the Parties exchanged positions regarding the one pre-*Markman* issue identified in the CRSR (whether or

not the later-filed Netflix case should be considered a CRSR Related Case with the instant case),

Google raised for the first time that it "intend[ed] to file a motion to transfer in the coming

weeks." *Id.*, Ex. B at 1. In support of its position, Google argued that consolidating the instant

case with the later-filed Netflix case "w[ould] allow the Court to fully consider Google's

anticipated motion to transfer ***prior to* Markman**," illustrating Google's awareness of this

Court's emphasis on resolving transfer issues prior to *Markman*. *Id.* at 2 (emphasis added). WAG

stated that Google had waived its right to file a motion to transfer. *Id.* at 3.

Despite its representation to the Court and to WAG, Google did not file this Motion in

"the coming weeks." Google made no mention of it in the Joint Motion for Entry of Agreed

Scheduling Order filed on December 6, 2021. Dkt. Nos. 33, 34. Instead, Google waited another

*five months* to seek to meet and confer with WAG on its Motion on April 5, 2022. Patchen Decl.

¶ 6. Google ultimately filed this Motion on April 7, 2022—precisely eight weeks and one day

before the scheduled *Markman* hearing. This deliberate holding back of filing the Motion

intentionally and unnecessarily delayed the *Markman* hearing. If Google in good faith intended

to move forward with a motion to transfer, it should have included it in the CRSR, and the

parties could have built in a briefing schedule in the Joint Motion for Entry of Agreed

Scheduling Order that would not have delayed the scheduled *Markman* hearing.[3]

In its Motion, Google argues that "requir[ing] parties to notify the Court of potential

transfer motions in the CRSR [would not] be feasible at the outset of a case when a defendant

---

[3] As set forth in WAG's opposition to Amazon's motion to transfer, WAG believes Amazon also waived its right to file a motion to transfer by failing to include it on the CRSR. *See WAG Acquisition, L.L.C. v. Amazon.com, Inc.*, No. 6:21-cv-00815-ADA (W.D. Tex. Apr. 20, 2022) (Dkt. No. 40). While still waiver, at least Amazon filed its motion to transfer on January 6, 2022 (Dkt. No. 30), such that venue discovery and the briefing on Amazon's motion to transfer was complete on May 2, 2022, which was 18 days before the scheduled Markman hearing. Google's filing of this Motion on April 7, 2022 meant that venue discovery in this case was still ongoing at the time of the scheduled June 3, 2022 *Markman* hearing.

may still be investigating the facts relevant to transfer." Mot. at 11 n.5. As noted above, WAG

filed its complaint on August 6, 2021, and the parties filed the CRSR on November 8, 2021.

Google identifies no reason why this three-month period would have been insufficient to conduct

a venue investigation, or why an additional five months were required, because no such reason

exists. None of the operative facts, including the locations of the parties' key witnesses, appears

to have changed between the time WAG filed its complaint in August 2021 and when Google

filed this Motion in April 2022.

Google's argument appears to hinge on its ostensible compliance with this Court's

practices. *See, e.g.*, Mot. at 11 n.5 ("Nothing in the Court's standing orders requires parties to

notify the Court of potential transfer motions in the CRSR. . . . And under the Court's standing

order regarding inter-district transfer, motions to transfer may be filed without leave of Court up

to eight weeks before the *Markman* hearing."). Even if Google complied with the letter of the

Court's standing order by filing its Motion eight weeks and one day before the *Markman*

hearing, it certainly did not comply with its spirit, given its prior notification to the Court of its

intention to file the Motion in November 2021 "in the coming weeks." The Court's amendment

of its Standing Order Governing Proceedings in April 2022 avoids this very situation. The

Court's procedures now require that "[a] motion to transfer anywhere may be filed within 3

weeks after the CMC or within 8 weeks of receiving or waiving service of the complaint,

whichever is later." Standing Order Governing Proceedings (OGP) 4.1—Patent Cases, dated

April 14, 2022, at 5. "Thereafter, a movant must show good cause for any delay and seek leave

of court." *Id.* Though the Court's amended OGP does not apply to the instant case, the Court

should deny this Motion under its inherent power to control its docket in view of Google's

dilatory tactics.

Based on the foregoing, Google knew or should have known at the time that the parties filed the CRSR that it would bring this Motion and that such motion was a pre-*Markman* issue. Thus, this Court should deny Google's Motion for its failure to identify it as such. If Google had properly included in the CRSR that it intended to bring a motion to transfer, the parties and the Court could have then agreed as to the timing of the transfer motion and any venue discovery to avoid the two-and-a-half-month delay of the scheduled *Markman* hearing.

### C. The Transfer Factors Weigh Against Transferring This Case to the NDCA

WAG does not contest that this action could have been brought in the NDCA. However, Google cannot meet its burden to show that the private and public interest factors clearly weigh in favor of such a transfer.

#### 1. *The Private Interest Factors Weigh Against Transfer*

##### a. Cost of Attendance of Willing Witnesses Is Neutral

One witness, who will appear at trial, is the inventor of the patents-in-suit, Harold Price, who Google agrees lives in Pennsylvania. WAG's President, William Grywalski, and counsel that prosecuted the patents-in-suit, as identified by Google, are based in New Jersey. WAG's other owner, Harry Emerson was previously located in New Jersey but is now in Cleveland, Ohio. Waco is closer and more convenient for all of WAG's willing witnesses than the NDCA.

On the other hand, venue discovery has revealed that Google's key witnesses are located in Cambridge, Massachusetts, rather than the NDCA. For instance, ███████████ ████████████████████████████████████████████████████████████ ██████████████████████████████ Patchen Decl., Ex. D at 58:4–15; 61:17–20. ██████████████████████████████████ ███████████████████████████. WAG identified in its infringement contentions that evidence of Google's infringement ████████████████████████████████



*See, e.g.*, Dkt. No. 41 at 5

); Dkt. No. 41-1 at 8–9; Dkt. No. 41-2 at 6–7.

Patchen Decl., Ex. D at 71:1–13.

Additionally,

. *Id.* at 61:21–62:12.

. *Id.* at 54:20–55:11, 55:25–56:2.

. *Id.* at 57:18–58:3, 62:13-16.

Thus, Google's key technical witnesses are located in Cambridge, Massachusetts.[4,5]

To the extent Google argues that WAG is focusing on those employees located in

Cambridge, Massachusetts to the exclusion of other potential Google witnesses, most of the time

---

[4] Google arbitrarily identified in its Motion four witnesses in San Bruno, California—three witnesses "with technical knowledge relevant to the Accused YouTube Services" and one witness "with knowledge of financial aspects of the Accused YouTube Services," while downplaying the fact that "some of Google's employees in Cambridge, Massachusetts may have relevant knowledge." *See* Mot. at 5–6 (citing Dkt. No. 40-1 ¶ 8).

[5] To the extent the Court elects to transfer this case, WAG contends that the more appropriate transferee forum would be the District of Massachusetts, which is also much more convenient to WAG and its witnesses than the NDCA.

at a patent infringement trial will be devoted to the inventors and the two sides' experts. Other than that, each side will likely have a very small number of fact witnesses at trial, from their respective locations. WAG expects it will call Mr. Price, from Pennsylvania, and Mr. Grywalski and/or Mr. Emerson, from New Jersey and Ohio, respectively. WAG may also call Google's employees responsible for the infringing products testify as to the functionality of their products. But, as discussed above, such employees would likely be the employees in Massachusetts, not California. WAG does not control Google's defense, but experience strongly suggests that Google, as the defendant, will likely have one or two current employees as representatives and limited fact witnesses. Where they would come from is speculative, but the testimony of Google's own witness suggests that they will come from Massachusetts, rather than California. This factor is thus essentially neutral.

### b. Availability of Compulsory Process Is Neutral

In the world of § 1404 motions there are real witnesses, and speculative, collateral, or imaginary witnesses. There are also witnesses who will only appear by deposition (which can occur anywhere, regardless of the trial court venue, without any net impact on anyone's convenience), as well as those witnesses who will actually be called at trial. Google has shown no reason why any of the non-party witnesses Google identifies would likely be called at trial.

Google solely identifies witnesses who allegedly have knowledge pertaining to one potential prior art system and several patent prior art references cited in *ex parte* reexaminations on patents not asserted in this case. Mot. at 7–8. Not surprisingly, Google cherry-picked potential prior art witnesses located in the NDCA.[6] Notably, Google's invalidity contentions identify *17* prior art systems and *57* patent and published application prior art references. Google's inclusion

---

[6] Third-party prior art witnesses in general are rarely, if ever, called at trial. Google only identifies them in the Motion to artificially increase the number of people located in California.

of witnesses relating to one prior art system and three patent prior art references amongst its

myriad prior art references illustrates that Google's prior art witnesses are speculative at best.

This factor is therefore also neutral.

c.  Relative Ease of Access to Sources of Proof Is Neutral

Here, the physical location of Google's electronic documents should have little to no

bearing on this factor, where Google, for which a major part of its business is providing

business-critical corporate data in the cloud (for itself and others), not only *can* but ***does*** make its

electronic documents, including its source code, available across the country and in the Western

District of Texas.

With respect to source code, Google's corporate designee, Henry Green, testified that ███

████████████████████████████████████████████████████████████████████████████

██████████████████████ Patchen Decl., Ex. D at 104:7–13. ████████████████████

██████████████████████████████████████ *Id.* at 103:21–104:6.

As this Court has recognized, it should also consider "the location of document

custodians and location where documents are created and maintained, which may bear on the

ease of retrieval." *Scramoge Tech. Ltd. v. Samsung Elecs. Co. Ltd.*, No. 6:21-cv-00454-ADA,

2022 U.S. Dist. LEXIS 92262, at *7 (W.D. Tex. May 16, 2022) (citation omitted) (finding this

factor neutral where the relevant evidence was not located in either contested venue). In this

case, the most pertinent information lies with key custodians identified above that are located in

Cambridge, Massachusetts (and thus in neither Texas nor California). As Mr. Green testified, ███

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

██████████ . Patchen Decl., Ex. D at 101:9–102:19.

Thus, this factor is also neutral.

d. <u>Practical Problems Weigh Against Transfer</u>

As to this factor, Google's arguments based on the FriendFinder case currently pending in the NDCA and the joint motion filed by the parties in the Netflix case currently pending before this Court to transfer to the NDCA carry little weight as both cases are effectively, if not actually, stayed, and the NDCA has had little to no occasion to consider any substantive issues of any patent-in-suit or any related patent. Mot. at 10.

The FriendFinder case, asserting different patents than those asserted herein, was transferred from the District of New Jersey to the NDCA on August 16, 2019. Patchen Decl. ¶ 12. Soon after the transfer, defendants in that case filed a motion to stay in view of certain then-pending IPR proceedings (again on different patents), which was granted on February 27, 2020. *Id.* ¶ 13. After the resolution of the IPR proceedings, the parties submitted proposed schedules for next steps in the case, including claim construction. *Id.* ¶ 14. The FriendFinder court did not set forth a schedule or schedule a conference regarding the proposed scheduling. *Id.* Indeed, there was no movement at all in the case until the defendants notified the court that it had filed of requests for *ex parte* reexamination on the patents asserted in that case on October 26, 2021, after which the court again stayed the case on December 23, 2021. *Id.* ¶¶ 15–16. The *ex parte* reexaminations remain pending, and as such, the stay remains in effect. *Id.* ¶ 17. Thus, nothing substantive has happened in the FriendFinder case for the last three years, and that was after the transfer of the case, which started eight years ago. *Id.* ¶ 11.

Additionally, with respect to the Netflix case, the parties filed their joint motion to transfer with this Court on February 2, 2022. *Id.* ¶ 18. The Court has yet to decide this motion, and as such, the case remains pending in this District. *Id.*

In the instant case before this Court, the parties have completed their *Markman* briefing, and the Court has set the hearing for August 23, 2022. In other words, this case has already

progressed substantively before this Court farther than the FriendFinder and the Netflix cases.

Furthermore, because of the stay, any *Markman* hearing on the related patents in the FriendFinder case will likely not occur for quite some time. According to the USPTO statistics on *ex parte* reexaminations, given that the requests were filed in August 2021, the stay in the FriendFinder case will likely not be lifted until October 2023 at the earliest. *See* Patchen Decl., Ex. E at 2 (average pendency for *ex parte* reexaminations from filing date to certificate issue is 25.7 months). Because the parties must first complete both claim construction discovery and briefing, the *Markman* hearing in the FriendFinder case will likely not occur until 2024. By that point, this case will likely have already reached resolution, if it remains in this District.

In discussing the FriendFinder and Netflix cases, Google minimizes WAG's case against Amazon, which in that instance involves the same patents, pending in this District, and scheduled for the same *Markman* hearing.[7] *See* Complaint, *WAG Acquisition, L.L.C. v. Amazon.com, Inc.*, No. 6:21-cv-00815-ADA (W.D. Tex. Aug. 6, 2021) (attached to Patchen Decl. as Ex. F) (asserting same patents-in-suit). This Court has denied transfer motions where there were co-pending cases before this Court involving the same patents or proceeding along similar schedules. *See, e.g.*, *Monterey Research*, 2022 WL 526242, at *13–14 (patents were common to two other cases in the District); *WSOU Invs., LLC*, slip op. at 26–27 (Patchen Decl., Ex. C) (co-pending case in this Court involved same parties and similar technology).

Thus, this factor weighs strongly against transfer.

### 2. *The Public Interest Factors Weigh Against Transfer*

#### a. Court Congestion Weighs Against Transfer

Google dismisses this factor as "speculative" (Mot. at 13); however, this Court has

---

[7] Amazon's § 1404 motion to transfer (*supra* n.3) is fully briefed, and the Court has not yet decided the motion.

repeatedly recognized the advantage it has with respect to this factor compared to the NDCA (*see, e.g.*, *Bel Power Sols. Inc. v. Monolithic Power Sys.*, No. 6:21-CV-655-ADA, 2022 WL 2161056, at *9 (W.D. Tex. June 15, 2022)), fully reflected in the FriendFinder litigation history above. Rapid disposition of patent cases is important given the Federal Circuit's longstanding sentiment of "[r]ecognition must be given to the strong public policy favoring expeditious resolution of litigation." *Kahn v. Gen. Motors Corp.*, 889 F.2d 1078, 1080 (Fed. Cir. 1989).

Therefore, this factor weighs strongly against transfer.

### b. Local Interest Is Neutral

As Google articulates, "[t]his factor evaluates 'significant connections between a particular venue and *the events that gave rise to a suit*.'" Mot. at 11 (citation omitted) (emphasis in original). Yet, in support of its argument that "Google has deep and broad connections to the [NDCA]," Google largely points to its general presence therein, such as the location of its headquarters and the fact that it "employs 51,135 people" there. *Id.* at 12. Such facts are irrelevant to the standard that Google itself sets out. Google further asserts that "the Accused YouTube Services were largely designed and developed [in the NDCA]," but as demonstrated above, the key witnesses and custodians of sources of proof are not located in California, but rather in Massachusetts. *Id.* Therefore, this factor is also neutral.

### c. Familiarity of the Forum with Law and Conflict of Laws Are Neutral

Like Google, WAG agrees these factors are neutral.

## IV. CONCLUSION

For the foregoing reasons, the Court should deny Google's motion to transfer for convenience to the NDCA.

Dated:    June 30, 2022

**HALEY & OLSON, P.C.**
100 North Ritchie Road, Suite 200
Waco, Texas 76712
Tel: (254) 776-3336
Fax: (254) 776-6823
By: */s/ Brandon R. Oates*
Brandon R. Oates
State Bar No. 24032921
Email: *boates@haleyolson.com*

OF COUNSEL:

**LISTON ABRAMSON LLP**
The Chrysler Building
405 Lexington Ave, 46th Floor
New York, New York 10174
Tel: (212) 257-1630
Ronald Abramson (*Admitted pro hac vice*)
David G. Liston (*Admitted pro hac vice*)
Ari J. Jaffess (*Admitted pro hac vice*)
Alex G. Patchen (*Admitted pro hac vice*)
M. Michael Lewis (*Admitted pro hac vice*)
Gina K. Kim (State Bar No. 24097937)
Email: *docket@listonabramson.com*

*Attorneys for Plaintiff WAG Acquisition,*
*L.L.C.*

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was filed electronically with the

Clerk of Court using the CM/ECF system which will send notification of such filing to all

counsel of record on June 30, 2022.

*/s/ Brandon R. Oates*
BRANDON R. OATES